**TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent, Brooklyn Union Gas Company, Intervenor.**

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 79–1506, 79–2209 and 79–2210.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1981.

Decided April 23, 1981.

Robert G. Hardy, Washington, D. C., with whom Thomas F. Ryan, Jr., Washington, D. C., was on the brief for petitioner. Richard T. Boone and Joseph A. Cannon, Washington, D. C., also entered appearances for petitioner.

Andrea Wolfman, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Jerome Nelson, Acting Gen. Counsel, Federal Energy Regulatory Commission, Washington, D. C., was on the brief for respondent. Barbara J. Weller and Rhodell G. Fields, Attys., Federal Energy Regulatory Commission, Washington, D. C., also entered appearances for respondent.

Joseph Paul Stevens and Alvin Adelman, Brooklyn, N. Y., entered appearances for intervenor in No. 79–1506 only.

Before WRIGHT, MIKVA and EDWARDS, Circuit Judges.

Opinion Per Curiam.

PER CURIAM.

In this case Transcontinental Gas Pipe Line Corporation (Transco) petitions for review of three Federal Energy Regulatory Commission (FERC) orders, all of which derive from either the acquisition or use by Transco of Hester Field, a storage area for natural gas. Transco raises two separate

issues. In its first petition[1] Transco challenges FERC's order requiring Transco to exclude a portion of the purchase price of Hester Field from its rate base. In the remaining two petitions[2] Transco challenges the Commission's order requiring Transco to flow through to its customers revenues received from the short term storage of natural gas. For the reasons set forth below, we agree with the Commission's decision in No. 79–2209 requiring the exclusion of part of the purchase price from the rate base, but we remand all three decisions, Nos. 79–2209, 79–2210 and 79–1506, for reconsideration by the Commission of the proper treatment of the revenues resulting from the short term storage.

## I.

In 1977, the Commission authorized the acquisition of Hester Field. Although the Commission allowed Transco to include the net book cost of the field in its rate base, it did not allow Transco to include the "acquisition adjustment," i. e. the difference between the purchase price and the net book cost. This particular allocation of costs results from the application of original cost accounting, a method whose use by the Commission has been consistently upheld. *See FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *Montana Power Co. v. FERC*, 599 F.2d 295, 300 (9th Cir. 1979).

Transco sought to avoid FERC's requirement by arguing that the benefits produced by the acquisition of Hester Field were sufficient to meet FERC's "offsetting benefits" exception to original cost accounting. Transco produced evidence seeking to show that the acquisition of Hester Field resulted in specific dollar benefits to its customers. However, the Commission rejected Transco's claim of offsetting benefits in part because it found that Transco's customers were no better off after the purchase of Hester Field than before. The Commission also found that, although Transco had

shown potential benefits resulting from the acquisition of Hester Field, Transco failed to establish a causal link between the purchase itself and the benefits anticipated sufficient to justify the inclusion of the acquisition adjustment in its rate base.

Transco presents two challenges to the Commission's determination. It first questions whether the Commission correctly determined that no specific dollar benefits had been shown. We find, however, that there is substantial evidence in the record to support the Commission's findings and that there is a rational basis for the conclusion which it reached. *See Public Service Commission v. FPC*, 543 F.2d 757, 782 (D.C. Cir.1974). Although Transco showed that Hester Field might be used to generate some future benefits for its customers, Transco did not establish that those benefits flowed directly from the purchase itself. Thus the Commission properly concluded on the basis of the record that there was inadequate justification for an invocation of the narrow "offsetting benefits" exception.

Transco's second challenge goes to whether the Commission's decision in this case departed from its prior decisions. We find, however, that to the extent prior Commission decisions suggested the application of a less stringent standard than was applied in this case, those decisions were sufficiently explained by FERC. *See Order Clarifying Prior Order and Denying Application for Rehearing, reprinted in* Joint Appendix at 99, 101–02.

## II.

In both the second and third orders, FERC authorized, pursuant to section 7 of the Natural Gas Act,[3] the use of Hester Field for short term storage. Both orders required Transco to include any revenues received from the service authorized in its 191 account, which would in effect pass those revenues through to Transco's customers. Transco claims that under our decision in *Panhandle Eastern Pipe Line Co.*

---

**1.** No. 79–2209.

**2.** Nos. 79–2210 and 79–1506.

**3.** 15 U.S.C. § 717f (1976).

*v. FERC*, 613 F.2d 1120 (D.C.Cir.1979), FERC had no power, pursuant to a section 7 certification proceeding, to require Transco to pass through to its customers the revenues received from the short term storage. Because *Panhandle* was decided after FERC had authorized the short term storage in this case, the Commission had no opportunity to consider whether the decision was dispositive of the issues here posed. Therefore, we will remand Nos. 79–2210 and 79–1506 in order to allow the Commission to determine in the first instance whether *Panhandle* is applicable to this particular factual situation. In addition, we will remand the proceeding (No. 79–2209) authorizing the purchase of Hester Field in order to maximize the Commission's flexibility in applying *Panhandle* to the short term storage revenues.

Although we offer no opinion on *Panhandle's* applicability, we note that the Commission might find that the revenue pass through in this case does not have the effect on rates which was found objectionable in *Panhandle*. If the Commission does find that *Panhandle* controls this case, the Commission may consider the possibility of adopting in a future section 4[4] rate proceeding the "tracker system" noted in *Panhandle*. *See* 613 F.2d at 1133. Alternatively, on remand the Commission might decide to condition Transco's certificates by including a "cross-refund provision." *See id.* at 1133–34 n.68.[5] We of course express no opinion at this time on the appropriate course of action; this matter should be left to the expert judgment of the Commission in the first instance.

**4.** 15 U.S.C. § 717c (1976).

**5.** As *Panhandle* noted, such a condition would allow FERC to require a cross-refund of the revenues received if a subsequent rate-making proceeding determined that the company's rates had become unjust or unreasonable. *Panhandle* raised but did not decide the question of whether such a provision would violate the prospective application requirement of section 5, 15 U.S.C. § 717d (1976). We note this possible difficulty as well but do not think it proper to resolve the issue at this time. FERC might draft a condition whose application would be prospective but which would, in determining the amount to be refunded, take into account the revenues already received by Trans-

## III.

Case Nos. 79–2209, 79–2210 and 79–1506 are hereby remanded to FERC for further consideration in light of this opinion. We agree with the decision of the Commission in Case No. 79–2209, and we affirm the judgments of FERC pertaining to the inclusion of the "acquisition adjustment" in the rate base and the applicability of the "offsetting benefits" exception. We remand No. 79–2209 only to maximize the Commission's flexibility in determining the proper treatment of short term storage revenues pursuant to the remand of Case Nos. 79–2210 and 79–1506.[6]

*So ordered.*

co. Such a condition might well avoid any section 5 difficulties and render any present resolution of the issue merely advisory. The Commission might also consider deleting the revenue condition from the short term storage certificates but adding an equivalent condition, flowing through any unexpected future revenues, to the certificate authorizing the purchase of Hester Field.

**6.** In other words, on the remand of No. 79–2209, the Commission need not relitigate or reconsider its judgments with respect to the exclusion of a portion of the purchase price from the rate base.